IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COORSTEK KOREA LTD.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 21-5168 |
| | : | |
| **LOOMIS PRODUCTS COMPANY** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                    February 17, 2022

CoorsTek Korea Ltd. bought an isostatic press from Loomis Products Company to use in its manufacture of ceramic component parts. CoorsTek now claims the purchased product is not operating as expected and it seeks damages for breach of contract and breach of the implied warranty of merchantability under the parties' contract and the United Nations Convention on Contracts for the International Sale of Goods. CoorsTek alternatively sues for unjust enrichment. Loomis moves to dismiss CoorsTek's Complaint or for a more definite statement.

We enjoy federal question subject matter jurisdiction. Issues of fact preclude a dismissal at this stage. CoorsTek adequately pleads the facts and legal theories underlying its claims subject to discovery over the next ninety days. We deny Loomis's motion.

**I.     Plead facts**

CoorsTek and Loomis negotiated "the commercial terms and conditions to govern the [p]ress's sale" over e-mail.[1] Loomis provided CoorsTek a written quote, quote number Q-18-124-MA, for the press.[2] CoorsTek then emailed Loomis confirming its order of the press by "attaching its revised Purchase Order PO17734, dated May 28, 2018" and the Loomis quote.[3] CoorsTek's purchase order incorporated CoorsTek's terms and conditions by reference.[4]

CoorsTek "notified Loomis that it planned to perform under the CoorsTek Terms" in the email by "paying the agreed upon down payment", and "Loomis did not object to CoorsTek's

stated plan."⁵ CoorsTek paid the initial down payment to Loomis for the press on May 28, 2018.⁶ Loomis emailed CoorsTek the following day "confirming that it received CoorsTek's down payment" and "attached a formal Order Acknowledgment and a Progress Invoice", both of which referenced CoorsTek's purchase order number.⁷ CoorsTek and Loomis later modified the terms of their agreement to add additional equipment and modified the CoorsTek purchase order each time.⁸

Loomis manufactured and delivered the press to CoorsTek in November 2019.⁹ Since then, the press suffered "at least a dozen shut-down failures due to defective components and systems since its installation" and from December 2020 to May 2021, averaged "two equipment problems per month."¹⁰

## II. Analysis

The parties disagree on when they formed the contract and what documents govern giving rise to Loomis's motion to dismiss or for a more definite statement. Loomis disagrees with CoorsTek its terms contained in the purchase order govern the parties, and argues we must partially dismiss CoorsTek's Complaint because it is not entitled to a refund of the purchase price or attorney's fees under the governing contract or the United Nations Convention on Contracts for the International Sale of Goods ("the Treaty").¹¹ Loomis also requests a more definite statement because it does not know which "components and systems" are defective, and it cannot prepare a defense.¹² CoorsTek counters it has plausibly alleged its terms govern the parties' relationship and has sufficiently alleged facts to invoke the Treaty.¹³ It further counters its pleading is not vague or ambiguous requiring a more definite statement.¹⁴

### A. We enjoy federal question jurisdiction.

We first clarify our subject matter jurisdiction.¹⁵ CoorsTek invokes our federal question subject matter jurisdiction alleging its claims arise under the Treaty, which provides a private right

of action in federal court.[16] It alternatively pleads we have diversity jurisdiction under 28 U.S.C. § 1332.[17] Loomis does not challenge our federal question jurisdiction; rather, it argues we have diversity jurisdiction and "the Court does not have to decide if federal question jurisdiction is presented under the [Treaty]."[18]

CoorsTek is "the master of [its] complaint," and we enjoy federal question jurisdiction.[19] We have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A plaintiff's well-pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[20]

CoorsTek brings two claims under the contract and Treaty, and one state law claim in the alternative.[21] The Treaty provides a private cause of action in federal court.[22] CoorsTek pleads, and Loomis admits, both the United States, where Loomis is headquartered, and South Korea, where CoorsTek is headquartered, are signatories to the Treaty.[23] Loomis makes no argument the Treaty does not apply here. Both parties apply the Treaty in their analyses. We enjoy federal question jurisdiction over this action because CoorsTek's claims arise under the Treaty.

**B.  Fact issues preclude dismissal before discovery.**

The parties dispute both when they formed the contract and the contract's terms.  Loomis nevertheless moves to dismiss CoorsTek's claim for a refund of the press's purchase price and attorney's fees. Loomis argues CoorsTek unequivocally accepted the terms of its quote with no reference to CoorsTek's terms and conditions. The balance of Loomis's argument flows from its proposition the contract formed when CoorsTek signed and returned the quote to Loomis. But this is not what CoorsTek pleads, and we must accept CoorsTek's allegations as true and draw all

reasonable inferences in favor of CoorsTek at this stage. Questions of fact exist as to the parties' contract formation precluding a finding as a matter of law on a motion to dismiss.

The Treaty requires a valid offer and acceptance to form a contract.[24] The Treaty adopts the mirror image rule, providing "[a] reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer" when the reply changes or adds material terms.[25] And we may consider parole evidence under the Treaty to determine the parties' intent to be bound.[26]

Questions of fact exist as to when the parties formed the contract and what documents it contains. While Loomis argues the contract unequivocally formed when CoorsTek returned the signed quote to Loomis, this is not what CoorsTek pleads.[27] CoorsTek pleads it sent both the signed quote *and* its purchase order containing additional terms to Loomis at the same time and indicated in its email to Loomis it planned to perform under its terms, to which Loomis did not object.[28] CoorsTek then paid Loomis, Loomis accepted payment, and sent a formal Order Acknowledgement and Progress Invoice to CoorsTek.[29] And CoorsTek pleads the parties negotiated the commercial terms and conditions over email, arguing this is relevant parole evidence to determine the parties' intent to be bound. In its motion to dismiss Loomis vigorously refutes it ever accepted CoorsTek's terms. But this too raises questions of fact. We accept CoorsTek's allegations as true and construe all reasonable inferences in CoorsTek's favor. Questions of fact exist as to the parties' intent and the contract formation based on the Treaty and CoorsTek's pleadings.

We are not persuaded by Loomis's reliance on *Roser Techs., Inc. v. Schreiber*.[30] Judge Schwab considered whether standard conditions are incorporated into an offer under the Treaty.[31] He detailed two cases from United States courts focusing on whether: (1) the buyer had actual

knowledge of the seller's general conditions, including whether the parties discussed them during negotiations; and (2) the party actually read the standard conditions.[32] Judge Schwab also considered authorities outside of the United States, including the German Supreme Court which held "[i]t is . . . required that the recipient of a contract offer that is supposed to be based on general terms and conditions have the possibility to become aware of them in a reasonable manner."[33] Judge Schwab concluded: "Under the [Treaty] standard conditions are only incorporated if one party attempts to incorporate the standard conditions and the other party had reasonable notice of this attempted incorporation."[34]

Judge Schwab then considered whether the seller's standard terms and conditions formed part of the parties' contract. The seller's quote included the following language: "According to our standard conditions of sale to be found under www.csnmetals.de, we have pleasure in quoting without engagement as follows", and the buyer's purchase orders referenced the quote numbers.[35]

Judge Schwab first found the buyer did not incorporate the seller's standard conditions into its purchase orders.[36] He relied on the Austrian Supreme Court's holding, "standard terms, in order to be applicable to a contract, must be included in the proposal of the party relying on them as intended to govern the contract in a way that the other party under the given circumstances knew or could not have been reasonably unaware of this intent."[37] He rejected the purchase orders contained the seller's standard conditions because the buyer did not intend for them to control evidenced by the purchase orders themselves containing contradictory terms to those contained in the seller's standard conditions.[38]

Judge Schwab next considered whether the seller's order confirmations included the seller's standard conditions, because if they did, the confirmations would be considered counteroffers rather than acceptances.[39] Judge Schwab found the order confirmation did not

contain the seller's standard conditions despite a reference to them because: the language is ambiguous; there is no evidence the buyer had actual knowledge of the standard conditions; there is no evidence the parties discussed the standard conditions during contract negotiations; and there is no evidence the buyer received the standard conditions.[40] Judge Schwab noted while he would typically "find further discovery on this issue appropriate . . . both parties agree that there are no further documents which would aid in the Court's determination of whether the standard conditions apply. Thus, the Court finds that . . . [the seller's] reference to its standard conditions did not suffice to incorporate those terms into the order confirmations" and are not part of the contract.[41]

Judge Schwab's analysis does not warrant dismissal. While Loomis attempts to rely on Judge Schwab's finding the purchase orders did not incorporate the standard conditions referenced in the quote, CoorsTek's claims are more analogous to Judge Schwab's decision on whether the order confirmations incorporated the standard conditions and thus constituted counteroffers under the Treaty. But here, unlike in *Roser*, CoorsTek pleads the parties "negotiated the commercial terms and conditions," which we may reasonably infer included CoorsTek's terms and conditions. We must accept CoorsTek's allegations as true at this stage, including the inference Loomis knew of and read CoorsTek's terms and conditions it pleads form part of the contract during the negotiations between the two parties.

We deny Loomis's motion to dismiss because there are issues of fact surrounding the formation of the parties' contract precluding a finding as a matter of law CoorsTek cannot recover the purchase price and attorney's fees.

### C. We deny Loomis's motion for a more definite statement.

Loomis also asks for a more definite statement identifying all components and systems CoorsTek contends are defective to prepare its defenses, including failure to join necessary parties. Loomis's argument presupposes Loomis's quotation terms govern the parties' agreement, which CoorsTek denies. CoorsTek also responds Loomis is on notice of the failures CoorsTek claims occurred with the press evidenced by its exhibit to its motion to dismiss.

A "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[42] "Motions under Rule 12(e) are 'appropriate when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself.'"[43] "Motions for a more definitive statement are generally disfavored, and are used to provide remedies for unintelligible pleadings rather than as correction for lack of detail."[44] "Factors courts consider in weighing Rule 12(e) motions include: (1) whether the purportedly deficient filing provides enough information for the opposing party to conduct its own factual investigation, (2) the degree to which the moving party is able to identify the claims against it, and (3) whether there is a good-faith explanation for why certain information was excluded from the filing."[45]

CoorsTek adequately pleads claims against Loomis. Loomis does not argue CoorsTek's complaint is unintelligible, or it cannot decipher the claims against it; Loomis rather argues the complaint lacks sufficient detail, namely the exact systems and components of the press which CoorsTek claims are defective. We do not find CoorsTek's complaint is "so vague or ambiguous" Loomis cannot "respond, even with a simple denial, in good faith, without prejudice to itself."[46] Loomis is on notice of the claims against it and can adequately prepare fact-based affirmative

defenses. In fact, Loomis submits a detailed list of defective components which CoorsTek sent to it pre-litigation with its motion to dismiss response. Loomis evidently has "enough information . . . to conduct its own factual investigation" and can "identify the claims against it."[47] The detail Loomis seeks from CoorsTek is "better suited at the discovery process rather than a motion for a more definite statement."[48] We deny Loomis's motion for a more definite statement.

## III. Conclusion

CoorsTek pleads contract claims within our federal question subject matter jurisdiction. It pleads facts and legal theories with sufficient detail subject to discovery. We deny Loomis's Motion to dismiss or for a more a definite statement.

---

[1] ECF Doc. No. 1 ¶ 15.

[2] *Id.* ¶ 16; ECF Doc. No. 1-4.

[3] ECF Doc. No. 1 ¶ 16.

[4] *Id.* ¶ 20.

[5] *Id.* ¶ 16.

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶ 23.

[10] *Id.* ¶¶ 2–3, 24.

[11] ECF Doc. No. 4-1 at 10–16.

[12] *Id.* at 16–18.

[13] ECF Doc. No. 5 at 3–6.

---

[14] *Id.* at 6–7.

[15] *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

[16] ECF Doc. No. 1 ¶ 11.

[17] *Id.* ¶ 12.

[18] ECF Doc. No. 4-1 at 9–10.

[19] *See, e.g.*, *Wood v. Prudential Ins. Co.*, 207 F.3d 674, 678 (3d Cir. 2000) (discussing well-pleaded complaint rule and finding plaintiff is "the master of the complaint") (internal citations omitted).

[20] *Goldman v. Citigroup Global Markets, Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

[21] *See, e.g.*, ECF Doc. No. 1 (Count I: seeking remedies from Loomis under the treaty; Count II: alleging breach of the implied warranty of merchantability as provided by the treaty).

[22] *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003) ("The CISG, ratified by the Senate in 1986, creates a private right of action in federal court.") (further citation omitted); *see also Hefei Ziking Steel Pipe Co. v. Meever & Meever*, No. 20-00425, 2021 WL 4267162, at *4 (S.D. Tex. Sept. 20, 2021) (finding federal question subject matter jurisdiction under the U.N. Convention on Contracts for the International Sale of Goods); *Mado Holdings, LLC v. Jinming Wu*, No. 17-1358, 2017 WL 7660407, at *2 (N.D. Ga. Sept. 22, 2017) ("The CISG is an international treaty which has been signed and ratified by the United States and China, among other countries. The CISG was adopted for the purpose of establishing 'substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and the seller.'") (further citation omitted); *Genpharm Inc. v. Pliva-Lachema a.s.*, 361 F. Supp. 2d 49, 53–54 (E.D.N.Y. 2005) ("The CISG is an international treaty that governs the formation of international sales contracts as well as the rights and obligations of the parties.").

[23] *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 397 (3d Cir. 2010) ("The CISG 'applies to contracts of sale of goods between parties whose places of business are in different States ... when the States are Contracting States [.]'") (citing 15 U.S.C.App., Art. 1(1)(a)).

[24] *See* Arts. 14–18, United Nations: Conference on Contracts for the Int'l Sale of Goods, 19 I.L.M. 668, 674–75; *see also VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 251 (7th Cir. 2016).

[25] Art. 19(1)–(3), 19 I.L.M. 668, 675–76; *see also VLM Food Trading Int'l, Inc.,* 811 F.3d at 251; *Roser Techs., Inc. v. Carl Schreiber GmbH*, No. 11-302, 2013 WL 4852314, at *5 (W.D. Pa. Sept. 10, 2013) ("Under the CISG, an acceptance with different standard conditions is not actually an acceptance, but rather is a rejection and counteroffer."); *CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 752 (D. Md. 2011) (discussing Article Nineteen of the Treaty);

---

*Norfolk S. Ry. Co. v. Power Source Supply, Inc.*, No. 06-58, 2008 WL 2884102, at *6–7 (W.D. Pa. July 25, 2008) (finding bill of sale sent after the purchase order materially altered the terms of the offer and thus constituted a rejection of the offer and counteroffer under Article Nineteen of the Treaty).

[26] Art. 8(1), (3), 19 I.L.M. 668, 673 ("(1) For the purposes of this Convention statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was . . . (3) In determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties."); *see also Transmar Commodity Grp. Ltd. v. Cooperativa Agraria Indus. Naranjillo Ltda.,* 721 F. App'x 88, 90 (2d Cir. 2018) (finding district court erred by not considering extrinsic evidence); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1007–08 (N.D. Ill. 2017) (citing *VLM Trading Int'l, Inc.* – "[l]ast year, the Seventh Circuit interpreted Articles 8(1) and 8(3) as permitting consideration of evidence of the parties' negotiations and subsequent conduct to determine whether they mutually, as contrasted with the hopes of but one of the parties, intended to incorporate a term when the contract was formed" – and finding genuine issues of material fact precluding summary judgment as to the contract formation); *VLM Food Trading Int'l, Inc.*, 811 F.3d at 253–54 (7th Cir. 2016) (discussing Article Eight of the Treaty and consideration of extrinsic evidence); *ECEM Eur. Chem. Mktg. B.V. v. Purolite Co.*, No. 05-3078, 2010 WL 419444, at *13 (E.D. Pa. Jan. 29, 2010) (permitting extrinsic evidence including negotiations or agreements pre-contract to determine the scope of the parties' rights and obligations under contract).

[27] ECF Doc. No. 1 ¶¶ 15–19.

[28] *Id.* ¶ 16.

[29] *Id.* ¶¶ 17–18.

[30] No. 11-302, 2013 WL 4852314 (W.D. Pa. Sept. 10, 2013).

[31] *Id.* at *4–6.

[32] *Id.* at *5 (discussing *CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 753 (D. Md. 2011) and *Tyco Valves & Controls Distribution GmbH v. Tippins, Inc.*, No. 04-1626, 2006 WL 2924814 (W.D. Pa. Oct.10, 2006)).

[33] *Id.* at *6.

[34] *Id.*

[35] *Id.* at *8.

[36] *Id.*

---

[37] *Id.* (quoting Oberster Gerichtshof [OGH] [Supreme Court] (*Tantalum powder case*), Dec. 17, 2003, English translation available at http:// cisgw3.law.pace.edu/cases/031217a3.html) (internal quotes omitted).

[38] *Id.*

[39] *Id.* at *9.

[40] *Id.*

[41] *Id.*

[42] Fed. R. Civ. P. 12(e).

[43] *Energy Intel. Grp. Inc. v. PECO Energy Co.*, No. 21-2349, 2021 WL 4243503, at *2 (E.D. Pa. Sept. 17, 2021) (quoting *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP Address 68.82.141.39*, 370 F. Supp. 3d 478, 483 (E.D. Pa. 2019) (further citation omitted)).

[44] *Id.* (quoting *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1086 (E.D. Pa. 2017)) (further citation omitted).

[45] *Id.* (citing *Strike 3 Holdings*, 370 F. Supp. 3d at 483; *Country Classics Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 372 (E.D. Pa. 2011)).

[46] *Id.*

[47] *Id.*

[48] *Andrews v. D2 Logistics, Inc.*, No. 21-869, 2022 WL 178817, at *8 (M.D. Pa. Jan. 19, 2022).